ROGERS,- Justice.
 

 On May 16, 1924; Martin L. Bankston executed a mortgage in favor of the Federal Land Bank to secure a farm loan in the sum of $1,500 upon 321.46 acres of land in Sections 1, 2 and 12, Township 3, South, Range 7 East, Tangipahoa Parish. Bankston, the mortgagor, died on the 16th day of August, 1926. During his lifetime and for some time after his death, the installments on the loan were regularly paid. The loan finally became delinquent and the mortgage was foreclosed, the bank becoming the purchaser at the sale on November 10, 1934. The description of the property is the same in the act of mortgage, the foreclosure proceedings, the adjudication of the property, and the sheriff’s deed. In this suit instituted against the widow and heirs of Martin L. Bankston, the Federal Land Bank, as the purchaser of the property at the foreclosure sale, is now asking that the act of mortgage and the sheriff’s deed be corrected “so as to include,. by whatever description, sufficient land in the western portion of Section 59, Township 3 South, Range 7 East, to comprise within its limits the land on which are located the residence and dairy barn formerly belonging to M. L. Bankston, together with the appurtenances thereunto dedicated, and the right of way thereto.”
 

 As the basis of its action, plaintiff alleges that it was the intention of the parties to include in the mortgage a strip of land “running North and South, off the west side of Section 59, Township 3 South, Range 7 East, extending from the west line of said Section sufficiently, East to include the land upon which is situated the main dwelling and dairy barn formerly belonging to M. L. Bankston, together with the appurtenances thereunto dedicated;” and
 
 *149
 
 “that their failure so to ■ do was induced by error, or, in the alternative, by fraud on the part of M. L. Bankston * * ■*.”
 

 Defendants filed pleas of estoppel and prescription and an exception of no right or cause of action. The record shows that the plea of prescription was referred to the merits but it does not show what disposition was made of the plea of estoppel and the exception of no right or cause of action. Defendants, in their answer, which was filed with full reservation of their exceptions and pleas, denied that the mortgage held by the plaintiff bank covered any portion of the land situated in Section 59. They allege that M. L. Bankston, during his lifetime, owned two separate farms,' one consisting of 321.46 acres situated in Sections 1, 2 and 12, and the other consisting of approximately 153 acres, situated in Section 59; that the mortgage was given upon the farm lying in Sections 1, 2 and 12 and not upon the property situated in Section 59, the title to which was in litigation at the time. Defendants denied that there was any error, fraud or misrepresentation committed by M. L. Bankston, or by defendants, and that the officials of the Federal Land Bank were induced to believe that the mortgage covered property situated in Section 59.
 

 The case was heard upon the merits and upon the plea of prescription, which was referred to the merits, and judgment was rendered in favor of defendants dismissing the suit. From that judgment the plaintiff appealed.
 

 We think that the judgment of the district court, based on the facts, not being manifestly erroneous, should be affirmed.
 

 This suit was filed on July 31, 1936, which was more than two years after the foreclosure of the mortgage and the execution of the sheriff’s deed. The object of the suit is to secure, because of error or fraud, the correction of the mortgage executed by M. L. Bankston on May 16, 1934, so as to bring within the terms of the mortgage a dwelling, dairy barn, and an indefinite portion of land situated in Section 59-Plaintiff contends that it is entitled to the relief sought because the application for the loan, signed by M. L. Bankston, shows that there were two dwellings and two barns upon the property which Bankston proposed to mortgage. In fact, in support of its charges of error or fraud, plaintiff wholly relies upon the application for the loan, together with the report of the bank’s appraiser.
 

 The execution of the application for the loan by M. L. Bankston is not questioned. This application consists of a series of printed questions and the written answers thereto appearing in the blank spaces provided for that purpose. . The answers to certain questions indicate that the applicant Bankston owned twenty-nine head of cattle and was engaged in the business of “farming and dairying,” and that he lived and was then on the “above land,” meaning, we take it, the land described in the application. The application refers to two dwellings and two barns located on the land proposed to be mortgaged, with the value placed upon each building.
 

 An examination of the report- of the bank’s appraiser shows that the appraiser personally examined the property Bank
 
 *151
 
 ston proposed to mortgage and indicates that the improvements located on the land consisted of a main dwelling valued at $1,500 and a dairy barn valued at $500. The appraiser placed a total value of $2,200 on all the improvements located on the property, and a value of $2,655 on the land. On the value thus given, the maximum loan value of the land was $1,327 and of the improvements, $400, a total of $1,727.
 

 The appraiser, in his report, characterizes the applicant as a “good farmer and dairyman,” and states that from the appearance of the farm and what he could learn, in his opinion, the gross earnings of the farm, including $600 from dairy v products, was $1,795. As a witness for plaintiff, the appraiser was examined and cross-examined in connection with his report.
 

 The application for the loan was signed by M. L. Bankston and witnessed by R. H. Sanders, the secretary-treasurer of the Amite National Farm Association. Mr. Sanders handled the application for the loan association, and by comparing the written answers to the printed questions with his signature, it is clear that the answers were prepared and written fey him and not by Bankston. Mr. Sanders was not called as a witness. Bankston died long prior to the trial of this case, and defendants were not in a position to avail themselves of his testimony concerning the transaction.
 

 The application for the loan not only indicates what we have hereinabove set forth, but it contains a particular description of the property that Bankston proposed to mortgage. This description definitely shows that the property consisted of 321.46 acres of land in Sections 1, 2 and 12 and does not show any land in Section 59. Endorsed on the application is a sketch of the land showing the location and number of acres in each section to be mortgaged. This sketch likewise fails to show that any of the land is situated in Section 59. The description of the property contained in the body of the application is identical with the description of the property as given on the accompanying sketch. No improvements are indicated on the sketch, although it appears that applicant, under “H. General” of the application, acquired the 321 acres he proposed to mortgage by inheritance from his father in 1918 and since that time he had made improvements valued at $3,000 on the property, the improvements consisting of building, fencing and clearing.
 

 The testimony of the bank’s appraiser adds nothing to the value of his report. Thirteen years elapsed between the date of his visit to the property and the date he testified in the case. His appraisement was made at a time when he was examining and appraising many other tracts of land. His recollection of the facts in connection with his appraisal was necessarily uncertain. When questioned as to these facts, he stated that owing to the time which had elapsed since they had. occurred, he would not undertake to remember them but preferred to rely upon the application and his report, accepting the sketch on the application as correct.
 

 On behalf of defendants, there is evidence in the record showing that there was no intention on the part of M. L. Bankston
 
 *153
 
 to mortgage the dwelling and dairy barn claimed by plaintiff in this suit. That although Bankston owned some cattle at the time he applied for the loan, he was not engaged in the dairy business, but was planning to enter the business in the near future, and that the dairy barn in dispute here was not constructed until some time after the execution of the mortgage in favor of plaintiff. That Bankston did not desire to include in the mortgage the house in which he was living because the land on which it was situated was in litigation. This litigation was between Bankston and J. E. Gill and was before this Court on two separate occasions. See Bankston v. Gill, 153 La. 234, 95 So. 701; Bankston v. Gill, 163 La. 891, 113 So. 137.
 

 There is also testimony in the record showing that, as set forth in the application for the loan, two dwellings and two barns were located upon the property Bankston proposed to mortgage. That Otis Bankston, the son of M. L. Bankston, was living in one of the houses and engaged in the dairy business at the time the mortgage was executed.
 

 The contention of plaintiff is that if there should be added to the property covered by the mortgage a strip of land off the west side of Section 59, extending from the west line of the section sufficiently east to include the land upon which is situated the dwelling in which the widow of Bankston now lives and has been living for 46 years and the dairy barn which was constructed after the death of Bankston, the sum would be the property that should be covered by the mortgage.
 

 There can be no doubt that where land intended to be mortgaged and actually mortgaged has not been described correctly, the error may be corrected, but before such correction can be made, the Court must be entirely satisfied that the property involved in the alleged error was actually the subj ect of the mortgage.
 

 Our study of this record has not convinced us that the plaintiff has met the high degree of proof required in a case of this kind.
 

 There is no ambiguity whatever in the description of the property mortgaged. The description in the act of mortgage is not only accurately given by section and lot numbers and acreage, but reference is also made to the act of partition under which the mortgagor himself acquired the property and the conveyance book and folio of the parish records in which the act of partition is recorded.
 

 There is no satisfactory proof of error in the description of the mortgaged property, or that the agreement embodied in the act of mortgage does not express the true intention of the parties.
 

 ' Plaintiff’s whole case rests upon the contents of two documents. They are the application for the mortgage and the report of the bank’s appraiser. But neither of these documents affirmatively shows that the contracting parties entered into any agreement different from that set forth in the act of mortgage. On the other hand, it is affirmatively shown that there were two dwellings and two barns located on the ■ property described in the act of mortgage as set forth in the application of the mortgagor.
 
 *155
 
 It is furthermore affirmatively shown that the dairy barn in dispute was not constructed until some time after the mortgage was executed, and that the strip of land in dispute formed part of a tract of land that was in litigation between M. L. Bankston and J. E. Gill. Since the dairy barn in dispute was not constructed until after the execution of the mortgage, it is clear that' the contracting parties could not have intended that the barn or the land upon which it was subsequently constructed should be covered by the mortgage. Nor is it probable that Bankston intended to include in the mortgage any land or portion of land the validity of the title to which was in contest before the courts. These circumstances seriously weaken the inference which plaintiff seeks to draw from the contents of the application of the mortgagor and the appraiser’s report.
 

 Numerous cases can be found in which the courts have held that errors in description may be corrected as between the contracting parties or their heirs. Some of these cases are cited on behalf of plaintiff, but no case has been cited, nor do we think any can be cited, in which an unambiguous description of property in a written contract can be substantially reformed on evidence as meager as that presented by plaintiff in this case. Moreover, it might be doubtful that the plea of error can be heard after the death of the ■mortgagor and after the verity of the mortgage as executed was put at issue as the result of the foreclosure proceeding.
 

 Defendants, by way of reconvention, ask for damages in the.sum of $1,750 for the alleged slander of their title. The trial judge rendered judgment rejecting plaintiff’s demands without passing on the reconventional demand. His failure to do so amounts to a rejection of the demand. In the brief filed on behalf of defendants* this Court is asked to award them damages to the extent claimed in reconvention. But this Court can not consider defendants’ demand since they neither appealed from the judgment nor answered plaintiff’s appeal.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 PONDER, J., recused.